# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**LEVY DICKERSON #356193**                          **CIVIL ACTION**

**versus**                                                              **NO. 04-2516**

**BURL CAIN, WARDEN**                              **SECTION: "S" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Levy Dickerson, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On December 11, 1998, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2]  On January 14, 1999, he was sentenced to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[3]  On April 25, 2000, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari and prohibition[5] which was denied on March 16, 2001.[6]

On March 15, 2002, petitioner filed with the state district court an application for post-conviction relief.[7]  That application was denied in part on May 31, 2002, and the state was ordered to respond to the remaining claims.[8] On November 12, 2002, petitioner filed a "Supplement and Amendment to Petition for Post-Conviction Relief."[9]  On April 22, 2003, the state district court

---

[2]  State Rec., Vol. X of XIII, transcript of December 11, 1998, p. 166; State Rec., Vol. IV of XIII, minute entry dated December 11, 1998.

[3] State Rec., Vol. X of XIII, transcript of January 14, 1999, p. 9; State Rec., Vol. IV of XIII, minute entry dated January 14, 1999.

[4]  State v. Dickerson, 760 So.2d 503 (La. App. 5th Cir. 2000) (No. 99-KA-647); State Rec., Vol. V of XIII.

[5]  State Rec., Vol. XII of XIII.

[6]  State v. Dickerson, 787 So.2d 299 (La. 2001) (No. 2000-K-1495); State Rec., Vol. XII of XIII.

[7] State Rec., Vol. V of XIII.

[8] State Rec., Vol. VI of XIII, Order dated May 31, 2002.

[9] State Rec., Vol. VI of XIII.

denied all remaining post-conviction claims.[10]   However, because of errors in that order, the Louisiana Fifth Circuit Court of Appeal granted in part a related writ application and the matter was remanded.[11]   On July 15, 2003, the state district court issued a new order denying the remaining claims.[12]   Petitioner then filed with the Louisiana Fifth Circuit Court of Appeal an application for a supervisory writ of review which was denied on September 24, 2003.[13]   He next filed with the Louisiana Supreme Court an application for a writ of review[14] which was denied on September 3, 2004.[15]

On that same date, petitioner, through counsel, filed this federal application for *habeas corpus* relief.[16]   In support of his application, petitioner claims:

1.      Petitioner was denied due process and a fair trial by (a) the admission of prejudicial evidence, (b) being made subject to prejudicial remarks by the State, (c) being subjected to double jeopardy, and (d) the state's withholding of witness

---

[10]   State Rec. Vol. VI of XIII, Order dated April 22, 2003.

[11]   <u>Dickerson v. Cain</u>, No. 03-KH-614 (La. App. 5th Cir. June 26, 2003); State Rec., Vol. VI of XIII.

[12]   State Rec., Vol. VI of XIII, Order dated July 15, 2003.

[13]   <u>Dickerson v. Cain</u>, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. VII of XIII.

[14]   State Rec., Vol. XIII of XIII.

[15]   <u>Dickerson v. Cain</u>, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII of XIII.

[16]   Rec. Doc. 1.

- 3 -

statements in violation of <u>Brady v. Maryland</u>, 373 U.S. 83

(1963);

2.      Petitioner was denied effective assistance of counsel; and

3.      Petitioner was indicted by an unconstitutionally appointed

grand jury.

The state concedes that petitioner's federal application is timely filed and that he exhausted his state

court remedies.[17]

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact,

questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the

claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under

§ 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481,

485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer

to the state court's decision unless it "was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States."  28

U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

---

[17]  Rec. Doc. 5, p. 4.

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On January 17, 1998, at approximately 4:00 a.m., Jefferson Parish Sheriff's Officers Lenny Brown and Christopher Fisher were dispatched to the Faith Place area in Terrytown to investigate reports of gunfire. While their initial investigation revealed no evidence of gunfire, they did hear gun shots at approximately 5:15 a.m. Shortly thereafter, in the vicinity of the apartment complex, the officers saw a brown Thunderbird being driven in a reckless manner. The officers effected a traffic stop and ordered the driver, Levy Dickerson, as well as the passengers, Strippling and Kirkland, to exit the vehicle. Officer Fisher conducted pat-down searches of each of the men, but did not find any weapons or contraband. Fisher looked inside the Thunderbird to determine whether there were any more passengers,

at which time he saw a chrome and brown handgun in plain view on the rear seat of the car.

During the course of the traffic stop, the officers received a radio call regarding a shooting at 1967 Faith Place, Apartment 197, David Johnson's apartment. Fisher stayed with the defendant and his companions while Brown responded to the call. When Brown arrived at the scene, he found Johnson lying face-down in the doorway of the second floor apartment. The officer recognized the victim as the man who had been arrested during an altercation with the defendant in December. Brown advised Fisher of this by radio and instructed him to detain the three men. The three suspects were thereafter transported to the detective bureau of the sheriff's office. Fisher, who transported defendant in his police unit, later found a key on the car seat where defendant had sat. There was testimony at trial that the defendant displayed a key to Johnson's apartment earlier that night while he was drinking and playing cards with friends.

After the defendant's arrest, he gave two tape-recorded statements, implicating Kirkland as the shooter.[18]

### Claim One

In his first enumerated claim, petitioner actually incorporates several disparate claims. The Court will separately address each of those claims.

First, he contends that he was denied due process and a fair trial by the admission of prejudicial evidence. Specifically, he argues that the trial court erred in allowing the introduction of (1) evidence of a prior bad act, i.e. a prior altercation involving petitioner and the victim, and (2) photographs of the victim and the crime scene. The state argues that these claims are procedurally barred.[19]

Regarding procedural bars, the United States Fifth Circuit Court of Appeals has held:

---

[18]   State v. Dickerson, 760 So.2d 503, 504 (La. App. 5th Cir. 2000) (No. 99-KA-647); State Rec., Vol. V of XIII.

[19]   Rec. Doc. 5, pp. 8-13.

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Petitioner first asserted these claims in his state post-conviction proceedings.  In the last reasoned state court decision addressing the claims, the trial judge rejected the claims, holding that the claims "were known to the defendant at the time of trial and at the time of appeal, thus failure to raise them on appeal deems them waived."[20]

That denial was apparently based on La.C.Cr.P. art. 930.4(C),[21] which is considered an independent and adequate state ground to support the application of a procedural bar.  Bell v. Cain, No. 02-259, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002), *certificate of appealability denied*, No. 02-30947 (5th Cir. July 30, 2003).  "When the state court has relied on an independent

---

[20]   State Rec., Vol. VI of XIII, Order dated May 31, 2002, p. 2.  The Louisiana Fifth Circuit Court of Appeal held that petitioner failed to demonstrate that the district court erred in that ruling. Dickerson v. Cain, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. VII of XIII.  The Louisiana Supreme Court denied the related writ application without assigning reasons.  Dickerson v. Cain, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII of XIII.

[21]   La.C.Cr.P. art. 930.4(C) provides:  "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

- 7 -

and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). In his federal application, petitioner has not established cause for the procedural default.[22] "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court must determine whether the application of the procedural bar would result in a fundamental miscarriage

---

[22] In connection with his claim that the trial court erred in allowing the introduction of evidence of a prior bad act, i.e. a prior altercation involving petitioner and the victim, petitioner contends later in his petition that defense counsel was ineffective in failing to take a writ to the intermediate appellate court on the trial court's pretrial ruling that the evidence was admissible, to file a pretrial motion in limine to exclude the evidence, and to object to introduction of the evidence at trial. For the reasons set forth on pages 27-29 of this opinion, petitioner's allegation that his counsel was ineffective in that regard has no merit. Accordingly, that meritless allegation of ineffective assistance cannot serve as cause for the procedural default.

With respect to his claim that the trial court erred in allowing the introduction of photographs of the victim and the crime scene, petitioner trial makes no attempt whatsoever to establish cause for the procedural default of that claim.

of justice.  In order to establish that there be a "fundamental miscarriage of justice," a petitioner

must "make a persuasive showing that he is actually innocent of the charges against him.

Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which

he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The

United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner
> show that it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt ... in light of
> all of the evidence, including that alleged to have been illegally
> admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongfully excluded or to have become
> available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, the Court finds that petitioner does not make a persuasive showing that he

is actually innocent of the charge against him.  Therefore, he has not demonstrated that any

miscarriage of justice will result from the application of the procedural bar.  Accordingly,

petitioner's claim that he was denied due process and a fair trial by the admission of prejudicial

evidence is procedurally barred in this federal court.

Second, petitioner contends that he was denied due process and a fair trial by various

remarks made by the prosecutor during the opening and closing statements.  As with the prior

claims, the trial judge rejected this post-conviction claim, holding that it was waived because it was

not presented on direct appeal,[23] which, as previously noted, is an independent and adequate state

---

23   State Rec., Vol. VI of XIII, Order dated May 31, 2002, p. 2.  The Louisiana Fifth Circuit Court
of Appeal held that petitioner failed to demonstrate that the district court erred in that ruling.
Dickerson v. Cain, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol.

ground for denial.  Because petitioner makes no attempt whatsoever to establish cause for his

procedural default[24] and because, as also previously noted, he has not made a persuasive showing

that he is actually innocent of the charge against him, the state correctly argues that this claim is also

procedurally barred.

Third, petitioner contends that he was subjected to double jeopardy.  The Louisiana

Fifth Circuit Court of Appeal rejected that claim on direct appeal, holding:

> On March 12, 1998, the Jefferson Parish Grand Jury returned
> an indictment charging the defendant, Levy Dickerson, as well as
> Russell Kirkland and Richard Strippling with first degree murder, a
> violation of LSA-R.S. 14:30.  The state subsequently reduced the
> charge to second degree murder, LSA-R.S. 14:30.1, and amended the
> indictment accordingly.  The matter proceeded to trial against all
> three defendants in September of 1998; however, during the course
> of the proceedings, the attorneys for Strippling and Kirkland moved
> for, and were granted, a mistrial.  The defendant herein, Levy
> Dickerson, then filed a motion to quash the indictment, arguing that
> a second trial following the mistrial would subject him to double
> jeopardy.  Following a hearing, the trial court denied the motion to
> quash.

---

VII of XIII.  The Louisiana Supreme Court denied the related writ application without assigning
reasons.  Dickerson v. Cain, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII
of XIII.

[24] Petitioner notes that trial counsel did not lodge an objection to the statements. Rec. Doc. 1,
supporting memorandum, p. 12.  However, he does not expressly contend that trial counsel was
constitutionally ineffective in failing to do so.  Moreover, because petitioner did not argue in his
state post-conviction application that his counsel was ineffective in that regard, and because he
would now be barred from so arguing, see La.C.Crim.P. arts. 930.4(E) and 930.8, any such
ineffective assistance of counsel claim would itself be procedurally defaulted.  A procedurally
defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred
claim unless plaintiff shows "cause and prejudice" for the defaulted ineffective assistance of counsel
claim.  See Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  Petitioner makes no attempt
whatsoever to make that showing.

The trial court subsequently granted a severance, and the case against the defendant proceeded to trial in December of 1998. At the conclusion of the proceedings, the jury returned a verdict of guilty as charged by a vote of ten to two. ...

....

In his sole assigned error, the defendant challenges the trial court's denial of his motion to quash. He specifically contends that he was subjected to double jeopardy when the court granted his co-defendants a mistrial, then subsequently re-tried him.

At the first trial in this matter, the defendant was tried together with co-defendants Richard Strippling and Russell Kirkland. During the proceedings, Detective Michael Tucker gave testimony regarding the key recovered as evidence in the investigation. The defendant's counsel asserted that he had never been informed of the key during pre-trial discovery, and objected to its introduction at trial. Kirkland's attorney stated that he wished the key to come into evidence, as it supported his client's defense.

After hearing the arguments of counsel, the trial judge said he was inclined to suppress the key. Strippling's counsel then moved for a mistrial, in order that he might have time to view the evidence and plan any changes in trial strategy. Kirkland's attorney joined in the motion. Although the minute entry for that day states, "[t]he defense atty [sic] joined in with a motion for mistrial," there is nothing in the transcript to show that defendant's attorney in fact joined in the mistrial motion. [FN1] The court granted the mistrial, and defendant's counsel did not object to the court's ruling. The defendant subsequently filed a motion to quash, arguing that he would be exposed to double jeopardy if he were subjected to a second trial, since he did not want or request the mistrial granted by the trial court.

> FN1. The court's clerk later informed the judge that the minute entry was in error, and that defendant's attorney did not join in the mistrial motion.

The trial judge denied the motion to quash, giving extensive reasons for his ruling. He stated that a mistrial was in the defendant's best interest, given that he objected to the admission of the evidence at issue. The judge noted that, had he granted a mistrial as to only Strippling and Kirkland, the fact that the trial continued as to Dickerson alone would have prejudiced the defendant in the minds of the jurors. The judge stated that he recalled defendant's counsel

- 11 -

having asked for a mistrial, although this might have occurred in chambers. He further reasoned that, by failing to object, defendant's attorney implicitly agreed to the mistrial.

The defendant now complains that the trial court erred in denying his motion to quash the indictment. He specifically argues that he did not join in the mistrial motion raised by co-defendant's counsel, that the mistrial was granted without his consent, and that he was subjected to double jeopardy when he was tried a second time. We find no merit to these arguments.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similar protections are offered by Article I, § 15 of the Louisiana Constitution. Protection against double jeopardy is divided into three basic guarantees: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a prosecution for the same offense after conviction; and (3) protection against multiple punishment for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Smith, 95-0061 (La. 7/2/96), 676 So.2d 1068. See also LSA-C.Cr.P. art. 591.

LSA-C.Cr.P. art. 775 provides that a mistrial may be granted under the following circumstances:

(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.

LSA-C.Cr.P. art. 591 provides that there is no double jeopardy bar to a second trial "where there has been a mistrial legally ordered under the provisions of Article 775, or ordered with the express consent of the defendant." Generally, where the trial court declares a mistrial without the defendant's consent, and where the mistrial is not based on one of the grounds listed in article 775, the action is considered an illegal dismissal, and any further prosecution

of that defendant for the same criminal conduct is barred by double jeopardy.  State v. Joseph, 434 So.2d 1057 (La. 1983); State v. Simpson, 371 So.2d 733 (La. 1979); State v. Givens, 97-17 (La.App. 5 Cir. 10/15/97), 701 So.2d 1042, writ denied, 97-2893 (La. 3/27/98), 716 So.2d 884.

While defendant's counsel did not explicitly join in the mistrial requested by Strippling's attorney, the trial court did not err in viewing counsel's silence as acquiescence.  In State v. Albert, 430 So.2d 1279 (La.App. 1 Cir. 1983), writ denied, 433 So.2d 711 (La. 1983), the court held that the failure of a defendant to object to a mistrial is synonymous to acquiescence in the court's ruling, which bars any subsequent complaint that the court-ordered mistrial violated the defendant's double jeopardy rights.

In the present case, jeopardy unquestionably attached in the first trial when the judge declared a mistrial.  However, we deem the defendant's silence to be an acquiescence, and thus a consent to the mistrial order.  Thus, there was no double jeopardy bar to the defendant's second trial.

Moreover, we find that a mistrial was necessary to ensure that the defendant received a fair trial.  In State v. Lawson, 338 So.2d 627 (La. 1976), the court held that the rule that a mistrial declared without a defendant's consent bars further prosecution does not apply where the court-ordered mistrial is regarded as justified in the interest of the accused, or is required by physical or legal necessity.

In the present case, the defendant's interests were best served by the granting of the mistrial.  The defendant objected to the key's admission into evidence. Counsel for Strippling and Kirkland wished to have the key admitted into evidence, but had not been informed about it prior to the first trial.  Given that this evidence was potentially exculpatory as to Strippling and Kirkland, they were entitled to a mistrial.  The defendant did not, however, wish the key admitted as evidence.  As the court noted, the defendant's case would likely have been prejudiced had the trial proceeded as to him alone.

For the reasons set forth herein, we find that the mistrial was properly ordered, and thus, the defendant was not exposed to double jeopardy.  Accordingly, the trial court did not err in denying the defendant's motion to quash the indictment.[25]

---

[25] State v. Dickerson, 760 So.2d at 504-06; State Rec., Vol. V of XIII.

To the extent that petitioner is requesting that this Court review the state court's determination that his conviction did not violate double jeopardy protections under state law, the Court cannot oblige.  Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).

To the extent that petitioner is arguing that his rights under the federal Double Jeopardy Clause were violated, the Court notes that the Fifth Amendment of the United States Constitution provides that no person shall "be twice put in jeopardy of life or limb" for "the same offence."  U.S. Const. amend. V.  "The fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment."  Rogers v. Lynaugh, 848 F.2d 606, 611 (5th Cir. 1988).  "A double jeopardy claim is a question of law."  Shute v. State of Texas, 117 F.3d 233, 238 (5th Cir. 1997).  Therefore, this Court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In this case, the state court correctly found that petitioner's double jeopardy rights were not violated because, by remaining silent, he acquiesced in his co-defendants' request for a mistrial in the original proceeding.  The United States Fifth Circuit Court of Appeals has held:

> When a criminal defendant consents to a mistrial before the jury reaches a verdict, double jeopardy will not bar a reprosecution.  This consent can either be express or implied.  If a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding.

United States v. Palmer, 122 F.3d 215, 218 (5th Cir. 1997); see also United States v. Benjamin, 129

Fed. App'x 887, 889 (5th Cir. 2005); United States v. Nichols, 977 F.2d 972, 974-75 (5th Cir. 1992).

The same is obviously true where, as here, a nonmoving defendant impliedly consents by remaining

silent while a co-defendant moves for a mistrial.  See Nye v. Herrera, 113 Fed. App'x 747, 748 (9th

Cir. 2004).

      Moreover, the state court also correctly alternatively found that the double jeopardy

was not implicated because the original mistrial was necessary to ensure a fair and legally-sound

trial.  The United States Supreme Court has long held that where a mistrial has been required by

"manifest necessity" or "the ends of public justice," then the Double Jeopardy Clause does not

prohibit a second trial.  For example, the Supreme Court held:

> Since 1824 it has been settled that [t]he double-jeopardy
> provision of the Fifth Amendment does not mean that every time a
> defendant is put to trial before a competent tribunal he is entitled to
> go free if the trial fails to end in a final judgment.  Where, for reasons
> deemed compelling by the trial judge, who is best situated
> intelligently to make such a decision, the ends of substantial justice
> cannot be attained without discontinuing the trial, a mistrial may be
> declared without the defendant's consent and even over his objection,
> and he may be retried consistent with the Fifth Amendment.  It is also
> clear that [t]his Court has long favored the rule of discretion in the
> trial judge to declare a mistrial and to require another panel to try the
> defendant if the ends of justice will best be served, and that we have
> consistently declined to scrutinize with sharp surveillance the
> exercise of that discretion.

Gori v. United States, 367 U.S. 364, 367-68 (1961) (citations, footnote, quotation marks, and ellipses

omitted); see also Illinois v. Somerville, 410 U.S. 458 (1973).  In the instant case, the state court

found that petitioner would have been prejudiced if the trial had proceeded and, presumably, the

resulting conviction would have eventually been overturned on appeal, thus necessitating a retrial.

Such a futile effort is not constitutionally required.  See Somerville, 410 U.S. at 471 ("[W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice.").

Fourth, petitioner claims that the state withheld witness statements in violation of Brady v. Maryland, 373 U.S. 83 (1963).  Specifically, he contends that the prosecution "apparently" withheld statements of Misty Bearden, Terri Crisler, and Natasha Murib.

Regarding Brady claims, the United States Fifth Circuit Court of Appeals has stated:

> Brady requires the state to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.
> Under Brady, to establish that the state has breached this duty, the defendant must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment.  This duty extends to both exculpatory and impeachment evidence.

DiLosa v. Cain, 279 F.3d 259, 262-63 (5th Cir. 2002) (internal quotation marks and citations omitted).

A Brady claim presents a mixed question of law and fact.  Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999).  Therefore, this Court is required to defer to a state court's decision rejecting petitioner's Brady claim unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In the last reasoned state court decision ruling on the <u>Brady</u> claim, the Louisiana Fifth Circuit Court of Appeal rejected the claim, holding:

> Relative to the July 15, 2003 order, relator has failed to meet his burden of proving that relief should be granted. Relator claims that the prosecutor withheld exculpatory material regarding witnesses' statements that contained exculpatory and impeachment evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and <u>Giglio v. United States</u>, 405 S.Ct. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Relator also claims that the State failed to disclose the existence of an agreement with the State's witness for immunity in exchange for testimony. However, we find relator has made no showing that the prosecutor withheld such material.[26]

This Court agrees with that conclusion. In this case, petitioner's counsel does not offer even an unqualified allegation that the prosecution withheld the statements at issue; rather, she contends only that the prosecution "apparently"[27] did so. That unsupported, bald speculation is woefully inadequate. Moreover, the failure to bring forth *any* evidence, such as an affidavit from trial counsel, that the statements were in fact withheld, is a curious omission in light of the state intermediate appellate court's ruling. Such an omission of any evidence on the initial prong of the <u>Brady</u> inquiry is, in and of itself, fatal. See <u>Harris v. United States</u>, 9 F.Supp.2d 246, 275 (S.D.N.Y. 1998) ("[T]he government does not bear the burden of establishing that documents were not withheld; it is [petitioner's] burden to prove that the government failed to disclose evidence favorable to [him].), <u>aff'd</u>, 216 F.3d 1072 (2nd Cir. 2000); see also <u>United States v. Avellino</u>, 136

---

[26] <u>Dickerson v. Cain</u>, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. VII of XIII. The Louisiana Supreme Court denied writs without assigning reasons. <u>Dickerson v. Cain</u>, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII of XIII.

[27] Rec. Doc. 1, supporting memorandum, p. 14.

F.3d 249, 261 (2nd Cir. 1998); Cruz v. Artuz, 97-CV-2508, 2002 WL 1359386, at *14 (E.D.N.Y. June 24, 2002).

Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's Brady claim.

Ineffective Assistance of Counsel

Petitioner claims that his counsel was ineffective in failing to object to the declared mistrial, failing to secure the presence of witnesses at trial, waiving a Batson challenge during voir dire, and failing to seek to exclude prejudicial evidence.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1).

The state district court rejected petitioner's ineffective assistance of counsel claims,

holding:

> Turning to assignment of error number three, defendant alleges he was denied his right to effective assistance of counsel based on the following allegations: trial counsel failure to object to the mistrial at petitioner's first trial; failure to secure several witness' presence at trial via pre-trial subpoenas; failure to file motions in limine; and failure to take a writ after adverse ruling regarding 404(B) evidence.
>
> In its response, the State maintains that a trial strategy, even if it proves unsuccessful, does not give rise to an ineffective assistance of counsel claim. In addition, even if the error falls wiing [sic] the ambit of trial strategy, it does not establish ineffective assistance of counsel.
>
> The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.
>
> The Louisiana Supreme Court addressed this very issue in <u>State v. Strahan</u>, 325 So.2d 231 (La. 1975).
>
>> "Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have the defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at the trial. We do not agree. These charges are either leveled at decisions made by counsel during the heat of trial, the

correctness of which cannot be determined by
hindsight, or the validity of which is not evident from
the record." Id. at 233.

The defendant's claims are essentially with the his counsel's
decisions regarding witnesses and motions filed during trial. These
claims are basically trial tactics based on criteria established by the
Supreme Court in Strahan. According to Strahan, an attorney's
decisions as to trial tactics do not rise to the level of ineffective
assistance of counsel. Thus, defendant's claim must fail because his
counsel's action at trial was considered trial tactics according to
Strahan and under the Strickland test, the defendant's claim must be
dismissed for failure of the defendant to meet the two-prong test.[28]

In the last reasoned state court decision ruling on the ineffective assistance of counsel

claims, the Louisiana Fifth Circuit Court of Appeal also rejected the claims, holding:

Additionally, relator alleges ineffective assistance of counsel.
We have reviewed relator's allegations in accordance with the
standard enunciated in Strickland v. Washington, 466 U.S. 668, 104
S.Ct. 2052, 80 L.Ed.2d 674 (1984). We find that relator failed to
meet his burden of proving that counsel's performance was deficient
and that the deficiency prejudiced him.[29]

For the following reasons, this Court agrees.

Petitioner's first contention is that his counsel was ineffective in failing to object to

the declared mistrial. As noted previously, at petitioner's first trial on the instant charge he was tried

with co-defendants Russell Kirkland and Richard Strippling. During the testimony of Michael

Tucker, petitioner's counsel objected to admission of the key into evidence. Counsel for Strippling

---

[28] State Rec., Vol. VI of XIII, Order dated July 15, 2003, Exhibit A.

[29] Dickerson v. Cain, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State
Rec., Vol. VII of XIII. The Louisiana Supreme Court denied writs without assigning reasons.
Dickerson v. Cain, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII of XIII.

- 21 -

and Kirkland had not been informed about the key prior to trial.  Because the key was potentially

exculpatory, they wanted the key admitted or, in the alternative, for a mistrial to be declared.  After

hearing all parties, the trial judge ruled:

> [T]his Court has before it two motions for a mistrial relative to the issue of a key which the State purports to have a witness testify to, as well as present before the jury.
>
> I have previously indicated that this Court is willing to exclude or prohibit the State from offering that evidence; however, one of the Defense counsel, particularly counsel for Mr. Strippling, has indicated that he may wish to approach that issue – I'm sorry – not Mr. Strippling – Mr. Kirkland – Mr. Riehlmann has indicated that he might wish to approach that issue during cross-examination, and the Court would find that it would be required to permit Mr. Riehlmann to do that.
>
> The issue then becomes whether or not, as a result of that, the other parties, particularly, counsel representing Mr. Strippling, is prejudiced inasmuch as he has indicated and suggested that he should have had an opportunity to engage in certain investigatory work relative to this piece of evidence and that the evidence is potentially Brady material, because it would suggest that there was not an unlawful entry, but an entry by permission.  I find that there is a reference to a key in the various statements, one or more of the statements, which was previously given to counsel; however, there yet remains the question of additional work which Defense might be permitted to perform with respects to this key.  So, as to clear up the issues as to whether there was consent, whether the key fits a particular door, who the key came from, where it was located when it was discovered, and a number of issues which cannot be solved during the course of a trial, particularly this trial.
>
> I'm of the opinion, therefore, that prohibiting the State from offering this piece of evidence into this trial would be insufficient to protect the rights of all the defendants, which is what the Court is required to do under the laws of this State; that is, to assure that each of these parties, the State, as well as each individual defendant, is given a fair opportunity to present its case, and that is rights are protected as to each one of the parties.
>
> And, therefore, I'm going to grant the motion for a mistrial in this case. ...

> I take this – this ruling weighs heavy upon the Court because of the time that has been spent already in the presentation of this case; however, I do find that I have no choice because of the entanglement of the various defenses to take the action which I have taken.[30]

Because the key was potentially exculpatory, the state courts found, and this Court agrees, that the key could not be kept out of evidence, as petitioner wanted, over his co-defendants' objection.  Therefore, a mistrial had to be declared with respect to the co-defendants.

Petitioner now argues that, faced with that inevitability, his counsel should have objected as to the declaration of a mistrial with respect to petitioner and insisted that the trial continue as to him alone with the key being excluded.  Obviously, counsel, weighing the two unappealing choices left to him, made the tactical decision that a mistrial was the preferable course.  The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.

Moreover, as noted, the state courts found that a mistrial was in petitioner's best interest, because he would likely have been prejudiced had the trial proceeded as to him alone.  This Court agrees.  Accordingly, the Court necessarily finds that petitioner cannot show that he was prejudiced by counsel's failure to object to the granting of a mistrial.

Petitioner's second contention is that his counsel was ineffective in failing to secure the presence of witnesses at trial.  Specifically, petitioner argues that counsel should have

---

[30] State Rec., Vol. XII of XIII, transcript of September 16, 1998, pp. 39-41.

interviewed and subpoenaed fourteen police officers, co-defendant Richard Strippling, Misty Bearden, and an "gun shot residue" expert.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

Petitioner furnished neither the state courts nor this Court any evidence in support of his bald assertions regarding the failure to subpoena those witnesses.  He has not provided affidavits from those individuals or any other corroboration that they would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that they would have testified at trial at all.[31]  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to subpoena those witnesses.

---

[31]  With one exception, petitioner does not even provide an indication in his petition as to how these proposed witnesses would have supposedly testified.  The sole exception is the "gun shot residue" expert, Colonel Joseph Passalaqua.  However, as petitioner acknowledges, Passalaqua *was* in fact subpoenaed.  See State Rec., Vol. IX of XIII, transcript of December 10, 1998, pp. 54-55 and 60-62.  It is true that, for whatever reason, Passalaqua ultimately was not called to testify.  Nevertheless, Passalaqua would simply have testified that petitioner's gun shot residue test was negative but that the tests performed on Russell Kirkland and Richard Strippling were positive.  That testimony was unnecessary, in that stipulations were entered to that effect.  State Rec., Vol. X of XIII, transcript of December 11, 1998, pp. 50 and 125-26.  Accordingly, that information was before the jury and petitioner cannot show that he was prejudiced by the failure to call Passalaqua.

Petitioner's third contention is that his counsel was ineffective in waiving a <u>Batson</u> challenge during voir dire.  The transcript reflects that defense counsel made and then withdrew a <u>Batson</u> challenge:

> MS. BENGE [the prosecutor]:
> > I exercise a backstrike on Mr. Brian Williams.
>
> MR. BARNETT [defense counsel]:
> > Who?
>
> MS. BENGE:
> > Brian Williams.  He's one of the ones that are already seated.
>
> MR. BARNETT:
> > Your Honor, I'm going to challenge.  These are black jurors.
> She's –
>
> THE COURT:
> > Keep your voice down.
>
> MR. BARNETT:
> > These are all black jurors.  She has struck – stricken –
>
> MS. BENGE:
> > There's no pattern.
>
> MR. BARNETT:
> > – with the exception –
>
> THE COURT:
> > She has been making a permanent relationship.
>
> MR. BARNETT:
> > She has stricken every black male on the jury.
>
> THE COURT:
> > That's not the case, Mr. Barnett.  You have to –

MS. BENGE:

Mr. John we had acceptable to the State, and we gave a race-neutral reason for the gentleman that was black, Mr. Davis, that Mr. Ron Austin knew – smelled alcohol on, and that Mr. Barnett had exonerated his brother in a case.  And for the record, we've also accepted Ms. Robin Johnson, who is an African-American female. And the reason why I'm striking Mr. Brian Williams is because he has an arrest for aggravated assault.  I have a rap sheet I can show the Court.

MR. BARNETT:

Nobody showed me that, if they were going to use it.

THE COURT:

Well –

MR. BARNETT:

What that was –

MS. BENGE:

I was not asked to produce it by anyone other than Mr. Riehlman, but I have it if you want to look at it.

MR. BARNETT:

No, that's okay.  I'll withdraw my objection.

THE COURT:

You're withdrawing it?

MR. BARNETT:

Yeah.[32]

Claims of racial discrimination in jury selection are analyzed utilizing the procedure established by the United States Supreme Court in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), and recently reaffirmed by that court in <u>Miller v. Dretke</u>, 125 S.Ct. 2317 (2005) and <u>Rice v. Collins</u>, 126 S.Ct. 969 (2006).  In <u>Rice</u>, the Supreme Court noted:

---

[32]  State Rec., Vol. XI of XIII, transcript of December 9, 1998, pp. 195-97.

> A defendant's <u>Batson</u> challenge to a peremptory strike requires a three-step inquiry.  First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race.  Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question.  Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices.  Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination.  This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

<u>Rice</u>, 126 S.Ct. at 973-74 (citations, internal quotation marks and brackets omitted).

In the instant case, the transcript makes clear that although the state used peremptory strikes on African-Americans, the state accepted other African-Americans.  There simply was no pattern of discrimination and no basis for making the required prima facie showing at the first-step of the <u>Batson</u> inquiry.  Moreover, in any event, the state proffered clearly persuasive justifications for the strikes exercised against African-Americans.  Defense counsel evidently withdrew his <u>Batson</u> challenge out of a recognition that it simply had no merit.  Counsel can hardly be considered ineffective for withdrawing meritless objections.  <u>See, e.g.</u>, <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Petitioner's final contention is that his counsel was ineffective in failing to  pursue a challenge to prejudicial evidence deemed admissible at a pretrial hearing.  On December 16, 1997,

the victim broke down petitioner's door and an argument ensued.  The victim, who was the aggressor, was arrested in connection with that incident; petitioner was not arrested.  The state gave notice that it intended to introduce evidence of that prior altercation at trial, arguing that the altercation served as petitioner's motive for killing the victim approximately one month later.  On December 9, 1998, a pretrial hearing was held, and the trial judge ruled that evidence of the prior altercation would be admissible at trial.  Petitioner argues that defense counsel should have taken a writ to the intermediate appellate court on that ruling, filed a pretrial motion in limine to exclude the evidence, and objected to introduction of the evidence at trial.

Petitioner's contention is that the evidence was inadmissible under Louisiana Code of Evidence article 404(B)[33] as a prior bad act.  However, that is a mischaracterization of the nature of the evidence and the reason it was offered, as the state made clear at the pretrial hearing:

> MS. BENGE:
> Your Honor, the State filed a Prieur notice in an abundance of caution just to make sure the State had – I'm sorry – that the Defense had notice that the State would be bringing this evidence to light.  And Mr. Bernard – Mr. Barnett is correct in that we're not alleging that Mr. Dickerson committed a wrong – another crime, he was not the defendant on this date, he was the victim.  So, you know, my argument is we filed a motion out of an abundance of caution, and it may not even rise to be worthy of having a Prieur hearing, but the State just did it in an abundance of caution to make sure Mr. Barnett had notice that this was coming in.  And in no way are we standing on the premise that Mr. Dickerson committed a bad act or another crime, Mr. Johnson committed the crime and the bad act on that date.

---

[33] In his argument, petitioner refers to Federal Rule of Evidence 404(b); however, that Rule is not applicable in a state criminal trial.  Louisiana Code of Evidence article 404(B) is the state equivalent of Rule 404(b).

> But I think it should be admitted as evidence of motive or as bad
> blood that existed between the victim and the defendant.[34]

As noted, the evidence at issue was not offered for the purpose of showing, and in fact in no way showed, that petitioner committed a prior bad act or was in any way a bad person. Rather, it was offered to show that there was a preexisting hostility between petitioner and the victim which gave petitioner a motive for the killing. "Motive is relevant to explain the actions of the accused and to show the intent with which he acted." State v. Monroe, 397 So.2d 1258, 1267 (La. 1981).

Accordingly, petitioner has failed to demonstrate that the state court's decision on any of his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects those claims.

## Grand Jury Claim

Petitioner's final claim is that he was indicted by an unconstitutionally appointed grand jury. The state argues that this claim is procedurally barred,[35] correctly noting that Louisiana law provides that such claims are waived if not asserted in a pretrial motion to quash.

> Any objections arising from the selection of the grand jury foreperson
> are treated as ones alleging discriminatory selection of grand jurors.
> Campbell v. Louisiana, 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d
> 551 (1998). All equal protection claims arising out of the selection
> or composition of grand juries in Louisiana remain subject to this
> State's procedural requirements. Any equal protection claim that is

---

[34] State Rec., Vol. IX of XIII, transcript of December 9, 1998, p. 16.

[35] Rec. Doc. 5, pp. 29-33.

not asserted in a pre-trial motion to quash is waived. La.C.Cr.P. arts. 533(1) and 535(D); State v. Pierre, 99-3156 (La.App. 4th Cir.7/25/01), 792 So.2d 899, 907; State v. Robinson, 32 794 (La.App. 2nd Cir.3/1/00), 754 So.2d 311, 321-322, writ denied, 00-989 (La.3/23/01), 787 So.2d 1008; State ex rel. Roper v. Cain, 99-2173 (La.App. 1st Cir.10/26/99), 763 So.2d 1, 4-5, writ dismissed, 00-975 (La.11/17/00), 773 So.2d 733; Deloch v. Whitley, 96-1901 (La.11/22/96), 684 So.2d 349.

State v. Richthofen, 803 So.2d 171, 194 (La. App. 5th Cir. 2001); see also Williams v. Cain, 125 F.3d 269, 274 (5th Cir. 1997) ("It is indisputable that under Louisiana law, a challenge to the legality of the grand jury venire must be made by a pretrial motion to quash.").

It is also clear that petitioner's claim was denied based on his procedural default. Petitioner first asserted this claim in his state post-conviction proceedings. The state district court rejected the claim, holding:

Turning to issue three, it is noted that at the time that defendant was indicted, grand jurors picked their own foreperson and the practice of the bench appointing the foreperson was no longer used. Code of Criminal Procedure article 533 provides that objections to the grand jury are addressed by a motion to quash the indictment. Under Code of Criminal Procedure Art. 535[C] a motion to quash on the grounds asserted by the defendant must be filed in conformity with Code of Criminal Procedure Art. 521, which in turn provides it must be raised by pretrial motion. A motion to quash must be filed timely or it is deemed waived. State v. Rose, App. 5 Cir. 1998, 97-943 (La. App. 5 Cir. 1/27/98), 708 So.2d 1093. In State v. Campbell, 95-0824 La. 10/2/95, 661 So.2d 1321, reh. denied, Nov. 3, 1995; Campbell v. Louisiana, ___ U.S. ___, 118 S.Ct. 1419, 1998 WL 183583 (U.S.), the defendant had filed a motion to quash prior to trial. In the instant case, the defendant filed a motion to quash on other grounds but did not include this ground in his motion or file another motion to quash raising this ground. Accordingly, this issue is deemed waived.[36]

---

[36] State Rec., Vol. VI of XIII, Order dated May 31, 2002, p. 3.

The Louisiana Fifth Circuit Court of Appeal found no error in the trial judge's ruling.[37]   The

Louisiana Supreme Court denied the related writ application without assigning reasons.[38]

As noted previously in this Court's discussion of the procedural bar doctrine, the

preliminary issue is whether the state court's decision rested on an independent and adequate state

law ground.  That issue requires little discussion.  The United States Fifth Circuit Court of Appeals

has definitively held that the Louisiana rule requiring that claims of discrimination in grand jury

procedures be asserted in a pretrial motion to quash is an independent and adequate state ground so

as to support the application of a procedural bar.  Williams v. Cain, 125 F.3d 269, 276 (5th Cir.

1997).  Therefore, as noted, "federal habeas review is barred unless the petitioner demonstrates

either cause and prejudice or that a failure to address the claim will result in a fundamental

miscarriage of justice."  Hughes, 191 F.3d at 614.

Petitioner cannot meet the "cause and prejudice" test in light of the United States

Fifth Circuit Court of Appeals' decision in Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003).  In that

case, as here, petitioner's claim regarding an allegedly racially discriminatory grand jury practice

was procedurally defaulted in state court because no motion to quash had been filed.  The Fifth

---

[37]  Dickerson v. Cain, No. 03-KH-969 (La. App. 5th Cir. Sept. 24, 2003) (unpublished); State Rec., Vol. VII of XIII.  The fact that the intermediate appellate court also noted that petitioner had failed to meet his burden of proof with respect to the claim is of no moment.  "A state court expressly and unambiguously bases its denial of relief on a state procedural default *even if it alternatively reaches the merits of a [petitioner's] claim*."  Fisher v. State of Texas, 169 F.3d 295, 300 (5th Cir. 1999) (emphasis added); see also Soria v. Johnson, 207 F.3d 232, 249 n.24 (5th Cir. 2000).

[38]  Dickerson v. Cain, 882 So.2d 602 (La. 2004) (No. 2003-KP-2953); State Rec., Vol. XIII of XIII.

Circuit found that petitioner could not overcome the resulting federal procedural bar based on the "cause and prejudice" requirement, holding:

> We need not address whether [petitioner] has made a showing of "cause" because we are confident that he has not been prejudiced. United States v. Shaid, 937 F.2d 228, 234 (5th Cir. 1991). After reviewing the trial record, we have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment. ... Given the strength of the State's case, a successful grand jury challenge would have served no purpose other than to delay the trial. Accordingly, [petitioner] has failed to prove actual prejudice.

Id. at 545. Similarly, this Court has reviewed the evidence against this petitioner and reached the same conclusion. Accordingly, the procedural bar in this case cannot be overcome based on the "cause and prejudice" test.[39]

Therefore, petitioner's claim is procedurally barred unless the application of the bar would result in a fundamental miscarriage of justice. As previously noted in this opinion, petitioner has not made a persuasive showing that he is actually innocent of the charge against him; therefore

---

[39] Moreover, in addition to not being able to establish prejudice for the reasons set forth in Pickney, this Court notes that petitioner also could not show cause in the instant case. In connection with this claim, petitioner contends that his counsel was ineffective in not filing a motion to quash. Rec. Doc. 1, supporting memorandum, p. 29. However, because that claim was never made, and now cannot be made, to the state courts, it is procedurally defaulted and cannot serve as "cause" for his grand jury claim. See supra note 24. Additionally, his contention of ineffective assistance of counsel is clearly meritless in any event. As the state notes in its response, the District Attorney amended the indictment to lower the charge against petitioner from first degree murder to second degree murder. If counsel had moved to quash the indictment, there is no guarantee that the District Attorney would not again have sought an indictment for first degree murder and, that time, actually pursued that charge. Accordingly, defense counsel did not perform deficiently in failing to move to quash the amended indictment. See Brown v. Cain, 337 F.3d 546, 550 (5th Cir. 2003).

he has not established that a failure to address the claim will result in a fundamental miscarriage of justice.  Accordingly, this Court finds that this claim is also procedurally barred.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Levy Dickerson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-seventh day of April, 2006.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**